IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                           Criminal No. 3:98CR338

BENJAMIN SANJURJO

## MEMORANDUM OPINION

Benjamin Sanjurjo, proceeding pro se, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 199).[1] Sanjurjo raises one claim alleging that the Court lacked subject matter jurisdiction over his prosecution. (§ 2255 Mot. 4.) Sanjurjo's § 2255 Motion was accompanied by a Memorandum in Support (Mem. Supp. § 2255 Mot., ECF No. 201). The Government has responded, asserting that Sanjurjo's claim lacks merit. (ECF No. 215.) Sanjurjo submitted a brief in opposition ("Reply," ECF No. 229), and subsequently filed a revised brief ("Revised Reply," ECF No. 230), which raises no new claims. For the reasons set forth below, Sanjurjo's § 2255 Motion (ECF No. 199) will be denied.

### I.  PROCEDURAL HISTORY

On December 2, 1998, a grand jury charged Sanjurjo with conspiracy to distribute and possess with intent to distribute

---

[1] The Court employs the pagination assigned to Sanjurjo's submissions by the CM/ECF docketing system.

cocaine base. (Superseding Indictment 1, ECF No. 38.) On February 3, 2009, Sanjurjo entered into a Plea Agreement in which he agreed to plead guilty to the one-count Superseding Indictment. (Plea Agreement ¶ 1, ECF No. 56.)

In the Statement of Facts accompanying the Plea Agreement, Sanjurjo agreed "that had the matter gone to trial, the United States would have proven the following facts beyond a reasonable doubt." (Statement of Facts 1, ECF No. 57.)

> 1. Beginning in or about 1994, certain associates of defendant's, living in the West End of the City of Richmond, Virginia, formed a group known as the "Dogg Pound."
> 2. Members of the "Dogg Pound" were involved in, among other things, the distribution of cocaine base, commonly known as "crack."
> 3. At the time the Dogg Pound was formed, defendant was in detention as a result of prior activity.
> 4. Upon defendant's return to the West End, he became a member of the Dogg Pound, and, along with other members, would sell the crack cocaine to customers in the West End of the City of Richmond, Virginia.
> . . . .
> 6. Defendant's involvement in the Dogg Pound continued until his September 8, 1997 arrest.[2]

(Id. ¶¶ 1-4, 6.) In his Plea Agreement, Sanjurjo again agreed that "the facts [in the Statement of Facts were] accurate in every respect." (Plea Agreement ¶ 11.)

---

[2] The Statement of Facts initially stated that Sanjurjo was arrested on September 8, 1998. However, the "8" in "1998" was stricken, and a "7" was written in. Sanjurjo, his counsel, and counsel for the Government all initialed the change. (Statement of Facts ¶ 6.)

2

On May 4, 1999, the Honorable Richard L. Williams entered judgment against Sanjurjo and sentenced him to 360 months of imprisonment, to be served concurrently with one-fourth (1/4) of Sanjurjo's remaining state sentence. (J. 2, ECF No. 80.) Sanjurjo did not appeal.

On February 2, 2011, Sanjurjo filed a motion to vacate his judgment pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure. (ECF No. 155.) By Order entered on April 18, 2011, the Court directed the Government to respond to Sanjurjo's motion. (ECF No. 157.) The Government did so on June 24, 2011. (ECF No. 158.) In lieu of a reply, Sanjurjo filed a second motion pursuant to Rule 60(b)(4). (ECF No. 172.) On January 5, 2012, the Court entered a Memorandum Opinion and Order which denied Sanjurjo's motions without prejudice and informed Sanjurjo that he could file a § 2255 motion. (ECF Nos. 179 and 180.) Sanjurjo filed the instant § 2255 Motion thereafter.

## II. ANALYSIS

### A. Juvenile Delinquency Act

Sanjurjo first asserts that the Court lacked subject matter jurisdiction because the "[G]overnment filed its charges, in court, in a manner inconsistent with the applicable Juvenile Delinquency Act." (Mem. Supp. § 2255 Mot. at 3 (emphasis

omitted).) In support, Sanjurjo states that his birthday is May 6, 1979, and that he was 19 years old when he was indicted. (Id.) According to Sanjurjo, he was entitled to be treated as a juvenile under the Juvenile Delinquency Act (the "Act") because he was under 18 when he committed the offense but over 18 when indicted. (Id.)

The Act defines a "juvenile" as "a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday." 18 U.S.C. § 5031. "Juvenile delinquency" is "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." Id. However, the Act "does not, of course, prevent an adult criminal defendant from being tried as an adult simply because he first became embroiled in the conspiracy with which he is charged while still a minor . . . ." United States v. Spoone, 741 F.2d 680, 687 (4th Cir. 1984); see also United States v. Wong, 40 F.3d 1347, 1365 (2d Cir. 1994) (citations omitted).

Sanjurjo "vehemently denies" that he participated in the conspiracy after his eighteenth birthday, and that the Government "can demonstrate no instance in which [he] ratified

4

his involvement in any conspiracy past his 18th birthday." (Mem. Supp. § 2255 Mot. 4.) However, Sanjurjo cannot offer anything to support this contention, because, as noted above, he agreed in the Statement of Facts supporting his guilty plea that his involvement in the conspiracy continued until his arrest on September 8, 1997. (Statement of Facts ¶ 6.) Sanjurjo admits that he turned eighteen on May 6, 1997. (Mem. Supp. § 2255 Mot. 4.) Therefore, Sanjurjo agreed when he pled guilty that his involvement in the conspiracy continued for approximately four months after his eighteenth birthday. Absent extraordinary circumstances not present here, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

In his Reply, Sanjurjo refers to various documents in an attempt to demonstrate that he was a minor and therefore subject to the provisions of the Act. First, he claims that, in its position with respect to sentencing of his brother and co-defendant, David Sanjurjo, the Government referred to Sanjurjo as being "15 years of age [and] already in juvenile custody." (Reply 3.) However, a review of that document reveals that the Government never made that reference. Rather, the Government noted that in 1995, David Sanjurjo wrote letters to his brother, "while the latter was incarcerated," to update him on the Dogg

Pound's drug activities. (Reply, Ex. 3, at 2.) This statement has no bearing on whether Sanjurjo was involved in the conspiracy past his eighteenth birthday.

Next, Sanjurjo alludes to the United States Court of Appeals for the Fourth Circuit's opinion affirming David Sanjurjo's conviction and sentence to demonstrate that he was a juvenile. (Reply 3.) Specifically, Sanjurjo references the following statements from the opinion: (1) "The probation officer reported in the offense section that many gang members were juveniles, including Benjamin Sanjurjo, David's brother"; and (2) that David Sanjurjo "also admitted knowing that his minor brother was involved." United States v. Sanjurjo, No. 99-4340, 1999 WL 803410, at *1 (4th Cir. Oct. 8, 1999). However, those statements were included to show that sufficient evidence existed to enhance David Sanjurjo's sentence based upon his use of minors to commit his crime. These statements simply do not refute the fact that Sanjurjo participated in the conspiracy beyond his eighteenth birthday.

Finally, Sanjurjo refers to the Government's May 31, 2012, response to his motion for modification of sentence to show he was a juvenile. (Reply 5.) In that response, the Government stated that Sanjurjo "was a juvenile when the conspiracy began," and that he sold crack cocaine until he was incarcerated on

6

juvenile charges. (Reply, Ex. 5, at 2.) Sanjurjo "immediately resumed crack distribution upon release from juvenile detention." (Id.) Again, though, this document makes no reference to the end of Sanjurjo's involvement in the conspiracy, and therefore does not refute that he was involved in the conspiracy beyond his eighteenth birthday.

In sum, the record is clear that although Sanjurjo became involved with the conspiracy while still a juvenile, his involvement with the conspiracy did not conclude until approximately four months after his eighteenth birthday. Accordingly, the Act did not prevent his prosecution as an adult, and the Court properly exercised jurisdiction.

B. **Petite Policy Violation**

Sanjurjo next asserts that the Court lacked subject matter jurisdiction because the Government "indicted [him] a second time, at the Federal level, when [he] became 19 years old, on the same matter for which [he] had been, in virtually identical time-line, adjudicated on by the State (of Virginia) Juvenile Domestic and Relations Court when he was a minor." (Mem. Supp. § 2255 Mot. 4.) Sanjurjo claims that his prosecution violated the policy set forth in Petite v. United States, 361 U.S. 529 (1960) (per curiam). (Mem. Supp. § 2255 Mot. 5.)

7

The <u>Petite</u> Court noted that "the general policy of the Federal Government [is] 'that several offenses arising out of a single transaction should be alleged and tried together and should not be made the basis of multiple prosecutions, a policy dictated by considerations both of fairness to defendants and of efficient and orderly law enforcement.'" 361 U.S. at 530. The <u>Petite</u> policy "'establishes guidelines for the exercise of discretion by appropriate officers of the Department of Justice in determining whether to bring a federal prosecution based on substantially the same act(s) or transactions involved in a prior state or federal proceeding.'" <u>United States v. Claiborne</u>, 92 F. Supp. 2d 503, 507 (E.D. Va. 2000) (quoting <u>United States Attorney's Manual</u> § 9-2.031(A)). However, even if the Court assumes that Sanjurjo was prosecuted for overlapping conduct in state and federal court, "it is well established that the <u>Petite</u> policy and other internal prosecutorial protocols do not vest defendants with any personal rights." <u>United States v. Jackson</u>, 327 F.3d 273, 295 (4th Cir. 2003) (citing <u>United States v. Musgrove</u>, 581 F.2d 406, 407 (4th Cir. 1978)). Accordingly, Sanjurjo's claim for relief pursuant to <u>Petite</u> will be dismissed.

8

### III. CONCLUSION

For the foregoing reasons, Sanjurjo's § 2255 Motion (ECF No. 199) will be denied. The action will be dismissed.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Sanjurjo has not satisfied this standard. Accordingly, the Court will deny a certificate of appealability.

The Clerk is directed to send a copy of the Memorandum Opinion to Sanjurjo and counsel of record.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Date: October 1, 2015
Richmond, Virginia